Case number 23-5138. Srinivasa Saiteza Mukkavilli, appellant, versus Ur M. Jaddou, director, U.S. Citizenship and Immigration Services, and Anthony J. Lincoln, secretary, U.S. Department of State. Mr. Banas for the appellant, Ms. Vick for the appellees. Good morning. Good morning, your honors. May it please the court. My name is Brad Banas. I represent the appellant, Mr. Mukkavilli, in this case. This court should vacate the lower court's decision because its Rule 12b analysis, 12b-6 analysis, engages in improper fact-finding, and it improperly says that the agency does not have a duty to make a final decision on a 485 application for adjustment of status. I want to first address what I call the retrogression argument in this case, because over the course of this case, Mr. Mukkavilli's visa was current, it retrogressed, and is now current again. I read the government... Before you get to the merits of that, if you could address the jurisdiction stripping argument that the government has made. How do we have jurisdiction to hear this case under 12-52? Neither 12-52, A-2B... Neither provision restricts judicial or jurisdiction over inaction. You'd have to interpret the terms by either 12-52, A-2B-1 or A-2B-2 to define action to mean inaction, and interpreting a word to means antonym would basically render that provision superfluous. Isn't having discretion over an action or a decision also having discretion about whether to take that action or delay the action or decision? I mean, isn't that part of the discretion the government has under 12-55A? No, Your Honor. They are required to make a final decision under 8 U.S.C. 11-54B. They don't dispute that. They have a requirement to make a final agency action on a properly filed adjustment status application. I would point you to the case out of the Ninth Circuit from December of 2023. Identical issue. The government made the same arguments in the Ninth Circuit, did not find that either provision precluded jurisdiction. That's called Bavaria versus Blinken. Well, they may have a duty to eventually make a decision, but do they have a duty to or an obligation to, you know, do they have discretion about the timing of that decision? They do as long as it remains reasonable because the Administrative Procedure Act requires them to make a final decision within a quote reasonable amount of time. And again, nothing in 12-52A. I think the only provision that's relevant here, if we're talking about the retrogression argument, would be 12-52A2B1 because that specifically identifies actions for adjustment of status applications. If we read 12-52A2B2 to just fill in the gaps that 12-52A2B1 doesn't cover, it renders it superfluous. Well, that's one way of thinking about it, but another way of thinking about it is that decision or action has to mean something different than a judgment under 12-52A2B1. And I would suggest, Your Honor, if you interpret decision or action to mean indecision or inaction, if it means everything, it means nothing. And for that reason, Your Honor, no court has no, I should say, no circuit court has agreed with the agency in this, on this position. And I would note on this particular issue, whether there is federal jurisdiction over retrogression cases has been decided in the opinion of the Fifth Circuit and the Eighth Circuit. We have arguments in both the Third Circuit and the First Circuit on this issue in the next month. And again, none of those circuit courts, there's only been one decision, admittedly, but none of them have seriously considered, from what I can tell, this jurisdiction stripping argument. Now, whether, I'm sorry. Can I ask you about whether Count 1 is still before us? This was the count that I think dealt with the rural visa program under the Reform Act. I didn't see any arguments about it in your opening brief. Is that forfeited? Yes, Your Honor. Okay. And Count 4, the government says it's, it's gone as well. That's the, you know, they used to expedite the equestrian stuff and now they don't expedite it anymore. We did, we did not challenge that on appeal. No, Your Honor. And then for Counts 2 and 3, your reply brief says, first line of the reply brief, is as of January 1st, 2024, those arguments will be rendered moot because state announced the EB-5 immigrant visas will be immediately available. Should we call him Mr. Tezza or Mr. Mukaville? Whichever one you prefer, Your Honor. All right. Tezza's easier to type over and over. Okay, very good. So, since we're now past January, our claims 2 and 3, you say they will be rendered moot. Are they moot as well? Mr. Mukaville's priority date, September of 2020, is now current, and so it is moot. Is it capable of repetition while evading review? I don't know. The visa bulletin moves forwards and backwards all the time, and I think that's something that Congress did not intend. If we were to write an opinion that says, it's your burden to show our jurisdiction, and we don't have jurisdiction if it's moot, and you've said it's moot, I think that just leaves Count 5. Is that right? I'm perfectly fine with that, Your Honor. And when I wrote the reply brief, I agree with that. However, in 10 days when the new visa bulletin comes out, it could be alive again. And if I understood the government's letter that was filed recently, they do not think it's moot. I didn't really understand the contents of their letter. But it's your burden to show our jurisdiction. Your Honor, I do think it's current right now. And I reserve four minutes for rebuttal. I have another question. So this court in DaCosta recently held that the same priority rule of CIS was not an unreasonable delay. I mean, what distinguishes this case from DaCosta? Great question, Your Honor. DaCosta, this case simply has more facts. First off, with all due respect to the panel and the circuit, I think it's wrong. I think you see. Even if it's wrong, it's still binding on us. It is, but it is limited to the four corners of the complaints that they reviewed. This is a Rule 12b6 motion. They went through all the allegations and claimed they were not specific non-conclusory allegations that stated a plausible claim. So that's the biggest difference. This is a new complaint. The biggest difference between this complaint and the Vegas, which was my client's in the DaCosta case, is that we have a rule, a processing logic they apply consistently, or have any rule that governs the amount of time it takes for them to make a decision on a form I-526. And in this case, unlike the Vega case, we had the FOIAs. We finally got them before we filed Mr. Mucavilli's case. And so we have evidence to support our allegations that for four years, including the time Mr. Mucavilli was over 200 applications that were getting decisions in 30 days versus 30 months, Mr. Mucavilli invested in this project to take advantage of that. And then they stripped it from them. And we have the emails now that are properly in front of this court. The DaCosta court found they were not. They also only looked at them under the sixth track factor for impropriety. And I would suggest they go to the first track factor. Does the agency actually apply its, quote, processing logic in a consistent way? And I think that's all we have to show, Your Honor. I can't- Does it have to be consistent, or does it have to be reasonable? At this point, Your Honor- Is that the same thing? I think there's two different questions. Do they have a rule that governs the amount of time it takes to make a decision, and do they apply it? The second one's a fact-intense question. And we now have evidence that at least for over 200 investors, they didn't apply it at all. They threw it out in the wind for whatever reason, whether improper or proper. That is key evidence that they didn't do it. We also now have evidence that the agency is deciding applications that were filed in 2023 in six months, leaving the folks who invested under the prior law out in the cold. And so Mr. Mukaville's link- or it should be line- placing the lines getting longer and longer every day. And for that reason, I think this is very distinguishable from DaCosta. I would also suggest, if you'll humor me, that DaCosta is wrong. It basically looks at my complaint that says the stoplight was red, looks at the agency's responses, the stoplight was green, and says, yep, it was green. That's an improper review of Rule 12b-6. It's not a time to weigh the evidence. And I think that was DaCosta's big error. I will also note it's caused a circuit and other courts have chosen not to apply it. So I do think there's no need to overturn it, but there is a need to distinguish it because of the specifics in this complaint. Thank you. Thank you. Good morning, Your Honors. Lindsay Vick on behalf of the government. This court should affirm the district court on both the grounds that it lacks subject matter jurisdiction over the adjustment of status claim and the denial of the motion to dismiss the visa petition claim. I want to begin by discussing Mr. Mukaville's visa petition claim because that's the- I mean, the government here argues that the failure to meet 706-1 means that we lack jurisdiction. But the APA is not a subject matter jurisdiction conferring statute. I mean, isn't that a failure to state the claim? I'm wondering what is the government's basis for saying the failure to meet a 706-1 claim goes to our jurisdiction? The basis is under the Southern Utah Wilderness Alliance. And that case- Norton is a mandamus case. Well, I mean, Norton talks about how the unreasonable delays under mandamus and mandamus goes to subject matter jurisdiction. It doesn't mean the APA claim goes to subject matter jurisdiction. Correct. But Norton also talked about how mandamus claims are very similar to APA claims. Well, they're similar in their reasoning. That doesn't- the reasoning of Norton doesn't turn the APA into a jurisdiction conferring statute. I think the main point there is that you do need a discrete legal duty that the agency has violated in order to have subject matter jurisdiction over an unlawful withholding or unreasonable delay claim. Why is that a matter of subject matter jurisdiction as opposed to failure to state a claim? I'm a little surprised that the in the district court and here. I mean, I can't find any case support for the idea that a 706-1, you know, the failure to state a claim for that goes to our subject matter jurisdiction. Can you cite any cases that say that? Well, we were invited to provide supplemental briefing on Norton in the district court. And so that's why the briefing went that way there. I think our stronger subject matter jurisdiction argument, though, is that 1252 A2B1 and B2 do preclude review of the adjustment of status claims here. Just to follow up on that line of questioning, though, we have a case PETA versus Department of Agriculture from 2015 to 706-1 case, and it refers to that claim as, quote, non-jurisdictional. It seems like we have precedents that say 706-1 claims are non-jurisdictional. It seems like you don't have any precedents that say they are jurisdictional. Am I right? I do not have anything at my fingertips at this moment. It's an important point that the government should be getting right. I mean, whether the APA provision here goes to jurisdiction or not seems like a cross-cutting issue that. Right. Well, and I think that there are there are cases in the circuit that lend mandamus and APA standards. Not with respect to jurisdiction. The standards may be similar. You have to have a discreet duty and the like, but they don't say that it's jurisdictional. I understand, Your Honor, and I think I would just say that our stronger subject matter argument is under 1252A2B2 and A2B1. And you didn't raise that below, though. Excuse me? You didn't raise that below, did you? We did raise that below. You did raise it below. Yes, yes. It wasn't briefed at length, but we did raise this below. And so. Just for clarification, on that argument, your 1252 argument, you're not arguing that that bars the unreasonable delay claim. Just counts two and three, the unlawful withholding claims. Correct. The claims relating to the adjustment of status. And that is because 1252A2B1 is clear that it precludes review of any judgment regarding the granting of relief. And that covers when and how adjustment of status is determined, how those applications are adjudicated, and when a visa number attaches. And I think before getting too far into those arguments, it would be helpful to explain the visa number process. And what could have happened if Mr. Mukavilli had been given a visa number when he applied, but then was later denied. So first, USCIS approves the visa petition. Then second, USCIS reviews the adjustment of status application and determines whether there are any bars to eligibility or inadmissibility. And then third, they decide whether to exercise their discretion and grant the application. Fourth, once that's completed, USCIS looks to the visa bulletin. And if a visa number is available, they send a request to the State Department for a visa number. At that point, an officer proceeds to approval. And then state reduces by one the visa numbers. I think we're familiar with the process for briefing. So in the government's view, what is the judgment here that's within the discretion of CIS? Is it the judgment about the timing about processing? Is it the government's position? I mean, the briefing is a little loose about this. I mean, is the thing that's within the discretion whether to make a decision at all or whether to make a decision in a certain amount of time? The judgment is wrapped up in that process that I was just describing. The timing or whether to make a decision at all? It goes to whether to make a decision at all and the timing. And that is because if at the step where they found a visa was not available, then they would not move forward with approval. And so in the case, the way Mr. Movilli argues it, if he had been issued the visa number at the time he filed and then it was later not available, then at the time he would have that visa number from that fiscal year that it was issued. And then if it's later denied, that visa number is lost because it cannot roll over into the other EB categories, which it normally would if it had not been wasted. And so the discretionary decision here is the decision of when and how to make this adjustment of status approvals. You know where Mr. Tezza is now in that process? He has a pending 526 petition. His visa petition remains pending and his adjustment of status application also remains pending. And importantly there, the agency will not approve an adjustment of status application without an approved visa petition. That is one of the core eligibility requirements to adjustment of status. So can you address the unreasonable delay claim? And in particular, I think the plaintiff's argument is that the one distinction from DaCosta is that they have more evidence that the government's not actually following its stated processing logic. Can you just give us your response to that? Yes, Your Honor. And so the visa availability analysis changed only slightly since DaCosta. And I believe that the DaCosta court was informed about the change prior to the decision. But they still follow the visa availability approach with an efficiency adjustment. And that efficiency adjustment was made to the third queue where visas are available and projects have been reviewed. And they're working through the backlog by bundling certain petitions. And in the briefing in DaCosta and in this case, my friend on the other side has made similar arguments that there is no line and that USCIS just picks petitions out of a pile and decides them. And obviously that is a more negative spin on what's going on. But it doesn't necessarily contradict what the agency is doing because it is not doing a straight FIVO first in first out approach. It is dividing the petitions based on visa availability, based on whether the review project has been reviewed, and then dividing them into workflows. And so the agency has been very clear on its websites, provides a lot of updates, provides a lot of detailed question and answer sessions about this complex approach that it uses for these complex petitions. Ms. Fick, for the unlawful withholding claim, the government argues that the agency isn't legally required to take this action in a certain amount of time. But with respect to the unreasonable delay claim, is the government making that same threshold argument? We do not make. Because that argument is the first argument of an unreasonable delay claim as well. Correct. Correct. Yes, and in the context of the visa petitions, we have not generally made that claim. I understand the district court below thought that there was a persuasive argument to be made that there is no duty. But the visa petition is governed by a very different statute that contains very different language and doesn't have the same very strong discretionary language that the Adjustment of Status statute has. So we don't... So the government is solely relying on the track factors? Correct. That's correct. You're conceding that there's a legal obligation? I don't know that we want to concede it, but we haven't pressed the argument in DaCosta. We did not press the argument there. And so our stronger argument is that the track factors. And I'm sorry, what is the distinction? So your thought is that the threshold question is different for unlawful withholding than for unreasonable delay? That there's a different legal framework? I mean, isn't it the same question about whether the government is required to take this action within a certain amount of time? Correct. You need to have a duty to do something in order to then delay it. Shouldn't the argument be the same in both contexts, that there is no duty? Well, that's not the way we've decided to argue these types of claims. And again, we think it's because the statute that applies to 526 petitions is much more detailed and could be construed to create a duty. But again, it's not something that I have briefed or that we have briefed in other cases. So again, I don't want to concede it, but it's not an argument that we have pressed here. I'll ask one more. You may have been going here earlier, but in DaCosta, at the very end of that opinion, our court was pretty harsh in reprimanding the government for not being clear about the AB5 process. So now that we're back, is there anything you can tell us that would give us insight into how that works? And again, I think maybe you'd started earlier, but what can you tell us now that you couldn't that you weren't the attorney then? Right. Can you tell us now that that attorney couldn't tell us then? Well, I think what went wrong there was the description of the visa availability approach, which I can go into more detail. But basically, that's the agency's rule of reason, and it's now the visa availability approach with an efficiency adjustment. Is where you don't review the applications first come first serve if the applicant is a country that's already filled the seven percent. Right. So it divides the petitions into three workflows. And so Q number one is for petitions where there's no visa available. Q number two is where a visa is available, but the underlying project hasn't been reviewed. And the third Q is for where there's a visa available and the project has been reviewed. And then it has decided with the efficiency adjustment to bundle petitions that were filed prior to November 30th, 2019, by review project and then order them based on the earliest filed petition in that grouping. And that was because prior to November 30th, 2019, there was a crush of applications because there was about to be a new rule that raised the minimum investment amount. So a lot of people got applications in prior to November 30th. Thank you. Okay. Thank you, your honors. And I ask that you affirm the ruling of the district court. We'll give you two minutes. Thank you, your honors. I'll be very quickly or very quick. First, the agency's argument under discretion requires them to actually be exercising discretion. In their briefs, they make clear they do not think they have the legal ability to decide an I-485 application for someone with a retrogressed visa number, something that's not current. In the DACA case, DHS versus Regents of California, the Supreme Court pointed out that there has to be an actual exercise of discretion. If it's a misunderstanding of law, and that's why they're refusing to do something, it does not discretionary decision. I think that applies here. In support of that, I would note that there is no evidence in the record, any discretionary decision to stop making a decision on Mr. Mukaville's specific I-485 because he retrogressed. That's nowhere in this record, period. Of course, we lost the motion to dismiss, so the government didn't get an opportunity if that exists. But again, they believe it's a legal deficiency. They believe it's illegal for them to make a decision unless he's current. So I would suggest that there is no discretion here, and these two provisions do not come into play at all. As for the 12b-6, I would suggest that processing logic is not enough under the first track factor. If an application goes into an agency and comes out of it, we can always describe the path it went. What the first track factor says is, are there guardrails in that rule that prevent applications from pending six years, seven years? For example, I deposed the Department of Labor yesterday, PERM applications. If an application goes more than one month after being assigned, it falls onto another list, it's caught up in a search, and they point that out and give it to the adjudicators to do the next week. That is something that governs the amount of time it takes to make a decision. There's none of that in the 526 context. There's nothing that prevents an application from pending eight, nine years. No guardrails. That means there's no rule of reason, regardless of whether we can describe how the application goes from the mail to a final decision five years later. And that's why we would ask this Court to vacate the lower-course decision and let us finish our case. Thank you, Your Honors. Thank you.
judges: Rao, Walker, Garcia